UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Crystal Tiessen,

                Plaintiff,                          Court File No. 16-cv-422 (JRT/LIB)

   v.

                                         **REPORT AND RECOMMENDATION**

Chrysler Capital, et al.,

                Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 37], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon the Motions to Dismiss filed by Defendant Repossessors, Inc. ("Repossessors"), [Docket No. 14], and Defendants Chrysler Capital ("Chrysler") and PAR North America ("PAR"), [Docket No. 18]. A hearing was conducted on September 14, 2016, and the motion thereafter taken under advisement. ([Docket No. 40]).

For the reasons set forth below, the Court recommends that Defendants' Motions to Dismiss, [Docket Nos. 14 and 18], be **GRANTED IN PART AND DENIED IN PART**.

**I.    STATEMENT OF ALLEGED FACTS[1]**

In June 2013, Crystal Tiessen ("Plaintiff"), a member of the Fond du Lac Band of Lake Superior Chippewa Indian Tribe ("the Tribe"), obtained a loan from Chrysler to finance the purchase of a vehicle. (Amend. Compl., [Docket No. 2], 2-3). Chrysler received a security interest in the vehicle to secure repayment of the loan. (Id.). When Plaintiff fell behind on her

---

[1] In their memoranda supporting their motions to dismiss, both Defendants agree that for the purpose of ruling on their motions, the Court should assume that the facts alleged in the Complaint are true. Accordingly, the Statement of Alleged Facts does so here.

payments, Chrysler hired PAR, who in turn hired Repossessors, to repossess the vehicle. (Id. at 4).

On April 27, 2015, between 5:00 a.m. and 7:00 a.m., Repossessors and John Doe Repossession Agent entered the Fond Du Lac Reservation, where Plaintiff was living with her mother, and repossessed the vehicle from Plaintiff's mother's driveway. (Id. at 4, 6-7). Later that morning, when Plaintiff called the Fond du Lac Tribal Police Department to report the vehicle missing, she learned that Chrysler had authorized the repossession. (Id. at 7). The Tribal Police Department gave Plaintiff PAR's telephone number, and Plaintiff called PAR, attempting to locate the vehicle and demanded its return. (Id. at 7-8).[2]

On February 19, 2016, Plaintiff filed her Complaint and an Amended Complaint, bringing suit against Chrysler, PAR, Repossessors (collectively, "Defendants"), and John Doe Repossession Agent.[3] (Compl., [Docket No. 1]; Amend. Compl., [Docket No. 2]). Plaintiff alleged (1) a violation of the Fair Debt Collection Practices Act (FDCPA) by Defendants and John Doe because the repossession did not comply with the Tribe's applicable ordinances,[4] so Repossessors and John Doe had no present right of possession, as required by the FDCPA for repossession; (2) wrongful repossession by Defendants and John Doe in violation of Minnesota state statutes; (3) conversion by Defendants and John Doe; (4) trespass by Repossessors and John Doe; and (5) violation of privacy by intrusion upon seclusion by Repossessors and John Doe. (Amend. Compl., [Docket No. 2], 9-14). At the heart of Plaintiff's Complaint is the assertion that

---

[2] It is unclear from the Complaint whether Plaintiff has retrieved the vehicle.
[3] John Doe Repossession Agent is not included in the collective "Defendants" because he has not been served and is therefore at present not a party to this action.
[4] At the time of the repossession here, Fond du Lac Band of Lake Superior Chippewa Ordinance #07/10, § 9-609 (2010) required the debtor's consent or judicial process prior to repossession. A 2016 amendment to the ordinance removed the language on which Plaintiff bases her claims.

Defendants' failure to comply with the tribal ordinance rendered the repossession wrongful, leading to the claims she now pursues. (Amend. Compl., [Docket No. 2], 9-14).

Repossessors answered the Amended Complaint and then filed a Motion to Dismiss and accompanying Memorandum in Support, ([Docket Nos. 14-15]), arguing that that the Court should dismiss Plaintiff's claims under the tribal exhaustion doctrine. Chrysler and PAR likewise answered the Amended Complaint and filed a Motion to Dismiss and Memorandum in Support that joined Repossessors' Memorandum. ([Docket Nos. 18, 20]). Plaintiff filed a Memorandum in Opposition to the Motions to Dismiss. (Mem. in Opp. to Motions to Dismiss, [Docket No. 28]). Repossessors filed a Reply Memorandum, which Chrysler and PAR joined. (Repossessors' Reply Mem., [Docket No. 33]; Chrysler and PAR's Mem., [Docket No. 35]).[5] On August 3, 2016, the Motions were referred to the undersigned United States Magistrate Judge by order pursuant to 28 U.S.C. § 636(b)(1)(B). (Order, [Docket No. 37]).

## II.    DEFENDANTS' MOTIONS TO DISMISS [Docket Nos. 14 and 18]

Defendants now move the Court for dismissal based on the purported doctrine of exhaustion of tribal court remedies. (Repossessors' Mem. in Support of Motion to Dismiss, [Docket No. 15], 3-8).

### A.  Standard of Review

The tribal exhaustion doctrine establishes that "due to considerations of comity, federal court jurisdiction does not properly arise until available remedies in the tribal court system have been exhausted." See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation, 495 F.3d 1017, 1021 (8th Cir. 2007). The "doctrine is based on 'a policy of supporting tribal self-government and self-determination,' and it is prudential, rather than jurisdictional.

---

[5] For ease of reference, since Defendants assert the same arguments in their respective Motions to Dismiss and supporting Memoranda, (see [Docket Nos. 20, 35]), this Report and Recommendation cites only to Repossessors' Memorandum.

Exhaustion is mandatory, however, when a case fits within the policy, and the legal scope of the doctrine is a matter of law to be reviewed de novo." Gaming World Int'l, Ltd. v. White Earth Band of Chippewa Indians, 317 F.3d 840, 849 (8th Cir. 2003) (internal citations omitted). Unless it is plain that tribal jurisdiction does *not* exist, "[a] federal court should 'stay [] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction.'" Id. (quoting Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 857 (1985)); see also DISH Network Serv., L.L.C. v. Laducer, 725 F.3d 877, 882 (8th Cir. 2013) (stating "plain" lack of jurisdiction requirement).

> As the Supreme Court has explained, examination of tribal court jurisdiction "should be conducted in the first instance in the Tribal Court itself," as part of the congressional "policy of supporting tribal self-government and self-determination." Allowing tribal courts to make an initial evaluation of jurisdictional questions serves several important functions, such as assisting in the orderly administration of justice, providing federal courts with the benefit of tribal expertise, and clarifying the factual and legal issues that are under dispute and relevant for any jurisdictional evaluation. This rule is prudential, however, and is not an absolute bar to federal jurisdiction. If it is "plain" that tribal jurisdiction does not exist and the assertion of tribal jurisdiction is for "no other purpose than delay," the exhaustion requirement does not apply.

(Citations omitted.) DISH Network Serv. L.L.C., 725 F.3d at 882; see also Nevada v. Hicks, 533 U.S. 353, 369 (2001) (stating requirement does not apply where assertion of jurisdiction is only for delay).

Generally, a tribe has no jurisdiction over the actions of non-Indians who come within the tribe's borders. Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 328 (2008). "Given [the] general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe, efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are presumptively invalid." (Internal citations and quotation marks omitted.) Id. at 330.

There are, however, exceptions to this general rule. First, a federal statute or treaty may expressly provide a tribal court with jurisdiction over certain claims. See Atkinson Trading Co., Inc. v. Shirley, 532 U.S. 645, 649-50 (2001). Where there is no such federal statute or treaty, a tribe has only such jurisdiction over nonmembers within its borders as stems from its retained or inherent sovereignty. Id.

Under this retained or inherent sovereignty, two sets of circumstances exist "in which tribes may exercise 'civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.'" Plains Commerce Bank, 554 U.S. at 329 (quoting Montana v. United States, 450 U.S. 544, 565 (1981)). Known as the Montana exceptions:

> First, "[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Second, a tribe may exercise "civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

(Citations omitted) Id.

**B. Analysis**

Although Defendants agreed to a stay of these proceedings rather than an outright dismissal in their Reply Memoranda and at the motions hearing, Defendants' original Memoranda in Support of the Motions to Dismiss argued that because Plaintiff's claim is based upon tribal ordinances and stems from acts that allegedly occurred within the tribal reservation boundaries, the tribal exhaustion doctrine requires this Court to dismiss the case and direct Plaintiff to proceed first in tribal court if she wants to pursue the action. (Repossessors' Mem. in Support of Motion to Dismiss, [Docket No. 15], 3-8). Plaintiff responded that the tribal court lacks jurisdiction, so requiring exhaustion of tribal remedies would serve no purpose other than

delaying the case. (Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 1). Plaintiff first argues that under the language of the FDCPA, the tribal court has no jurisdiction over FDCPA claims, which is the basis for this Court's jurisdiction over her other claims. (Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 4-5). If Plaintiff is correct and the tribal court plainly would not have jurisdiction, the tribal exhaustion doctrine does not apply. See Gaming World Int'l, Ltd., 317 F.3d at 849.

The FDCPA states: "An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, *or in any other court of competent jurisdiction*, within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d) (emphasis added). Plaintiff argues that tribal court is not a "court of competent jurisdiction," analogizing to Hicks, 533 U.S. at 353.

In Hicks, 533 U.S. 353 (2001), Nevada state game wardens and tribal officers conducted an ultimately unsuccessful search of Hicks' on-reservation home in search of evidence that he had illegally killed a California Bighorn sheep off reservation. Id. at 355-56. Hicks, a member of the Fallon Paiute-Shoshone Tribes of western Nevada, subsequently brought suit in tribal court against the state game wardens and the State of Nevada claiming violations of his civil rights, remediable under 42 U.S.C. § 1983. Id. at 356-57.

When the tribal court and the tribal appeals court rejected the state defendants' argument that tribal courts lacked jurisdiction over the case, the state officials and Nevada filed a claim in federal district court seeking a declaratory judgment that the tribal court lacked jurisdiction. Id. The federal district court granted summary judgment to Hicks and the Ninth Circuit Affirmed. Id. at 357. The United States Supreme Court granted certiorari. Id.

After addressing another issue in the case, the United States Supreme Court rejected Hicks' contention that the tribal court could consider his § 1983 claim because it was a court of general jurisdiction. Id. at 366. The Supreme Court held that the historical and constitutional presumption of concurrent state court and federal court jurisdiction over claims based on federal law "is completely missing with respect to tribal courts," which are not courts of general jurisdiction. Id. at 366-67. Although certain other federal statutes, such as the Indian Child Welfare Act, give tribal courts jurisdiction over questions of federal law, the Court observed that there was no such statutory provision for tribal court jurisdiction over § 1983 claims. Id at 367-68.

The Supreme Court also pointed out that "tribal-court jurisdiction would create serious anomalies" because there is no way to remove a federal question case from tribal court to federal court, which could leave defendants without "the right available to state-court § 1983 defendants to seek a federal forum." Id. at 368. The Supreme Court declined to do as it had done once before and read a state-removal provision to allow removal from a tribal court to federal court as well. The Supreme Court concluded: "Surely the simpler way to avoid the removal problem is to conclude (as other indications suggest anyway) that tribal courts cannot entertain § 1983 suits." Id. at 368-69. Accordingly, the Supreme Court so held. Id. at 369.

A concurrence to the Tenth Circuit's majority opinion in Burrell v. Armijo, 456 F.3d 1159, 1175 (10th Cir. 2006), argued to extend Hicks to claims under 42 U.S.C. §§ 1981 and 1985, under the authoring judge's belief that there is "no reason to distinguish the § 1983 claim in Hicks from the Burrells' § 1981 and § 1985 claims."

Plaintiff now argues that this Court should similarly extend Hicks to FDCPA claims because adjudicating FDCPA claims does not implicate a tribe's self-governance, nor is there a

statutory grant of jurisdiction or any provision for removal of FDCPA claims to a federal court. (Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 8-9).

The Court declines to so extend Hicks for two reasons. First, although Plaintiff does not acknowledge this, in a footnote in Hicks, the United States Supreme Court expressly stated: "Our holding in this case is limited to the question of tribal-court jurisdiction over state officers enforcing state law." 533 U.S. at 358 n.2. The current case does not involve state officers enforcing state law; therefore, Hicks does not control here. Second, Hicks discussed whether tribal courts are courts of "general" jurisdiction. The FDCPA does not require a court hearing claims under its provisions to be a court of "general" jurisdiction; it requires only that a court deciding FDCPA claims be a "court of competent jurisdiction." See 15 U.S.C. § 1692k(d).

Plaintiff has made no persuasive argument that a tribal court is not a court of competent jurisdiction to hear and decide an FDCPA claim, and Defendants conceded on the record at the motions hearing that the tribal court has the authority to hear FDCPA claims. (September 14, 2016, Motion Hearing Digital Recording, 10:09-10, 10:16-18). In addition, even where no federal statute or treaty gives the tribe jurisdiction over Plaintiff's claims, the tribal court may have jurisdiction over non-member Defendants for their acts within the reservation's borders if its jurisdiction stems from the Tribe's retained or inherent sovereignty, as illustrated by the Montana exceptions. See Atkinson Trading Co., Inc., 532 U.S. at 649-50. At the motions hearing, Defendants conceded on the record that the facts alleged in the Complaint are sufficient for the tribal court to assert jurisdiction over Defendants under the Montana exceptions. (September 14, 2016, Motion Hearing Digital Recording, 10:09-10, 10:16-17).

Next, Plaintiff argued, in her Memorandum in Opposition and at the motions hearing, that the Tribal Code at issue, [Docket No. 29-3], does not give the tribal court jurisdiction over

FDCPA claims. (Id. at 10:23-25; Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 5-8). The relevant tribal code provision, as Plaintiff sees it, is in Chapter 100 (the Rules of Civil Procedure), Rule 110 (titled "Original Jurisdiction"):

> **Subdivision 3.** Original jurisdiction shall extend to all civil actions
> (a) to which the Fond du Lac Band of Lake Superior Chippewa is a party;
> (b) that concern the regulation of treaty rights as vested in the Fond du Lac Band of Lake Superior Chippewa;
> (c) arising under the inherent authority of the Fond du Lac Band of Lake Superior Chippewa;
> (d) arising under the Constitution of the Minnesota Chippewa Tribe or as is recognized under the Constitution and laws of the United States;
> (e) arising under the by-laws, statutes, ordinances, resolutions, codes, and laws enacted by the Fond du Lac Reservation Business Committee;
> (f) arising under the customs and traditions of the Ojibwe people of the Fond du Lac Band of Lake Superior Chippewa; and
> (g) arising at common law including, but not limited to, contract claims, tort claims, property claims, insurance claims, and claims based on commercial dealings with the Fond du Lac Band, its agencies, sub-entities, and corporations chartered pursuant to its laws.

Plaintiff asks the court to interpret the phrase "as is recognized under the Constitution and laws of the United States" in subsection (d) by inserting the word "it" so that the subsection reads: "arising under the Constitution of the Minnesota Chippewa Tribe or as <u>it</u>"—the Constitution of the Minnesota Chippewa Tribe—"is recognized under the Constitution and laws of the United States." (Emphasis added.) (Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 6). Then, Plaintiff argues, it is clear that none of the sections by which the tribe defines its jurisdiction would allow it to hear an FDCPA claim.

To now do as Plaintiff asks would be imprudent. Interpretation of the Tribe's Civil Code by this Court in the first instance to conclude that the tribal court has no jurisdiction over the Plaintiff's FDCPA claim would be contrary to the longstanding rule that determination of whether a tribal court has jurisdiction should be conducted first by the tribal court itself. <u>See</u> <u>Nat'l Farmers Union Ins. Cos.</u>, 471 U.S. at 856-57. <u>See</u> <u>also</u> <u>Attorney's Process & Investigation</u>

Servs., Inc. v. Sac & Fox Tribe of The Mississippi in Iowa, 401 F. Supp. 2d 952, 961 (D. N.D. Ia. 2005) ("[I]t would be premature and inappropriate for this court to interpret the Tribal Code and determine whether the Tribal Court has subject matter jurisdiction" over the lawsuit because "[t]he court must defer to the Tribal Court to interpret the extent of its jurisdiction in the first instance").

The Eighth Circuit has stated:

> Our court has not discussed how "plain" the issue of tribal court jurisdiction needs to be before the exhaustion requirement can be waived, but the Supreme Court indicated in [Strate v. A-1 Contractors, 520 U.S. 438 (1997)] that the bar is quite high. According to the Court, the requirement to exhaust should be waived only when the issue of tribal court jurisdiction is invoked for "no other purpose than delay." In other words the exhaustion requirement should be waived only if the assertion of tribal court jurisdiction is frivolous or obviously invalid under clearly established law. In circumstances where the law is murky or relevant factual questions remain undeveloped, . . . prudential considerations . . . require that the exhaustion requirement be enforced.

DISH Network Serv. L.L.C., 725 F.3d at 883.

The Court concludes that it is not plain that a Tribal court would *not* have jurisdiction and the Tribal Court in this case should determine its own jurisdiction over FDCPA claims in the first instance. See Gaming World Int'l, Ltd., 317 F.3d at 849 (stating that unless it is plain that tribal jurisdiction does *not* exist, "[a] federal court should 'stay [] its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction'").

In a related argument, Plaintiff also contends that requiring proceedings in tribal court is unnecessary because the 1-year statutory deadline to bring an FDCPA claim has passed, so at this point she cannot bring the claim in tribal court. (Mem. in Opp. to Motion to Dismiss, [Docket No. 28], 9-10). The Eighth Circuit has held that this 1-year deadline is jurisdictional, cannot be waived, and is not subject to equitable tolling. See Hageman v. Barton, 817 F.3d 611, 616-17 (8th Cir. 2016) (recognizing and reaffirming holding in Mattson v. U.S. W. Commc'ns,

Inc., 967 F.2d 259 (8th Cir. 1992)). Plaintiff is concerned that if the Court dismisses the current action, the Tribal Court will apply the 1-year deadline and find her claim is untimely, and the 1-year deadline will similarly prevent Plaintiff from then refiling her claims in federal court.

As all parties agreed on the record at the motions hearing, Eighth Circuit precedent, such as the Eighth Circuit's holding that the 1-year deadline is substantive rather than procedural, is not binding on the tribal court. (Id. at 10:11-13, 10:16-18, 10:21). "Indian tribes are '"domestic dependent nations"' that exercise 'inherent sovereign authority.' As dependents, the tribes are subject to plenary control by Congress. And yet they remain 'separate sovereigns pre-existing the Constitution.'" Michigan v. Bay Mills Indian Community, 134 S. Ct. 2024, 2030 (2014).

States are not bound to follow federal interpretation of federal law, except interpretations propounded by the United States Supreme Court, nor does the location of a State within the geographic region of a federal circuit impose an obligation to follow that circuit's holdings on matters of federal law. See gen. Loigman v. Kings Landing Condo. Ass'n, Inc., 734 A.2d 367, 372 n.7 (N.J. Super. 1999); see also HLBC, Inc. v. Egan, 50 N.E.3d 1185, 1192-93 (Ill. Ct. App. 2016) (stating, in light of defining the term "debt collector" in the FDCPA, "'if the lower federal courts are uniform on their interpretation of a federal statute, this court, in the interest of preserving unity, will give considerable weight to those courts' interpretations of federal law . . . if the federal courts are split, we may elect to follow those decisions we believe to be better reasoned.").

Similarly, tribal courts, as courts of a sovereign separate from the federal government, are not bound by a certain Circuit's interpretation of federal statutory provisions, even if the tribal reservation is within a Circuit's geographic boundaries. Although the Tribal Court here may ultimately agree with the Eighth Circuit's reasoning, there are other federal circuits which have

not done so. See Thompson v. Nat'l Credit Adjusters, LLC, No. 10-cv-2307 (SRN/FLN), 2011 WL 6003955, *2, n.2 (D. Minn. Nov. 30, 2011) (noting Circuit split and that the Eighth Circuit is the only circuit thus far to find the time limit jurisdictional); see also Mangum v. Action Collection Serv., Inc., 575 F.3d 935, 939-40 (9th Cir. 2009) ("Nothing in the structure of [15 U.S.C. 1692k(d)] tells us that the time limitation was also a jurisdictional limitation."); Marshall-Mosby v. Corp. Receivables, Inc., 205 F.3d 323, 327 (7th Cir. 2000) ("[T]he statute of limitations provision in the FDCPA is not a jurisdictional restriction.").

In addition, Defendants both agreed on the record at the motions hearing that they would not object to the Court staying these proceedings, rather than dismissing them outright. (September 14, 2016, Motion Hearing Digital Recording, 10:10-11, 10:15-16). Then, if the Tribal Court determines that it does not have jurisdiction over the FDCPA claims, Plaintiff may resume her pursuit of those claims here. Plaintiff also agreed on the record that staying rather than dismissing these proceedings alleviates Plaintiff's concerns about the potential consequences of the 1-year deadline. (September 14, 2016, Motion Hearing Digital Recording, 10:21). The United States Supreme Court has also approved imposing a stay under these circumstances. See Nat'l Farmers Union Ins. Cos., 471 U.S. at 857 (ordering district court on remand to determine whether stay was appropriate to allow exhaustion of tribal remedies).

The decision to stay a case is largely discretionary, and the undersigned Court concludes that a stay is appropriate here in order to safeguard Plaintiff's opportunity to be heard on her FDCPA claims in federal court in the event that the Tribal Court holds it does not have jurisdiction.

Although Plaintiff maintained at the motions hearing that she still opposed being required to pursue her claim in the Tribal Court, she also conceded that Defendants' concessions,

combined with a stay of proceedings in this Court rather than an outright dismissal, alleviated all of her articulated objections to proceeding in Tribal Court. (September 14, 2016, Motion Hearing Digital Recording, 10:21, 23).

1. As originally moved, Defendants ask this Court for outright dismissal of the case.

2. To the extent that the Motions to Dismiss, [Docket Nos. 14, 18], request outright dismissal, the undersigned recommends that the Motions be denied.

3. In their Reply Memoranda and on the record at the motions hearing, however, Defendants amended the relief sought and asked this Court to direct Plaintiff to pursue her claims in Tribal Court but to stay the current proceedings and retain jurisdiction over the case. (Repossessors' Reply Mem., [Docket No. 33], 2; September 14, 2016, Motion Hearing Digital Recording, 10:10-11, 10:15-16).

4. In light of Defendants' modified position, to the extent that the Motions to Dismiss, [Docket Nos. 14, 18] request that the case be stayed and the Plaintiff directed to submit her claims to the Tribal Court, the undersigned recommends that the Motions be granted.

### III. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Repossessors, Inc.'s Motion to Dismiss, [Docket No. 14], be **GRANTED IN PART AND DENIED IN PART**, as set forth above;

2. Defendants Chrysler and PAR's Motion to Dismiss, [Docket No. 18], be **GRANTED IN PART AND DENIED**, as set forth above;

3. The proceedings in this Court be **STAYED**, the parties submit Plaintiff's claims to the Fond du Lac Tribal Court, and the parties be ordered to file a joint status letter with the Court on CM/ECF every 120 days.


Dated: October 20, 2016
s/Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.